**SIGNED THIS: November 10, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM JACOB HEROLD, JR., | ) | No. 07-81575 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| RICHARD E. BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-8139 |
| | ) | |
| WILLIAM JACOB HEROLD, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court after trial on the amended complaint filed by Richard E. Barber, Trustee (TRUSTEE), against William Jacob Herold, Jr. (DEBTOR), seeking denial of the DEBTOR'S discharge under Sections 727(a)(2) and (a)(6)(A).

The DEBTOR filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on July 23, 2007, the same day that he signed the petition. Among the assets listed

on his petition were a checking/savings account at IH Mississippi Valley Credit Union (IHMVCU) having a petition balance of $500, a law suit against Howard Johnson Motel having a value of $32,000, and a 1992 20' Searay boat, motor and trailer valued at $6,500. The DEBTOR scheduled unsecured creditors holding claims totaling $40,311. The DEBTOR claimed both the boat and the balance in the bank account as exempt. No exemption was claimed in the lawsuit.

The first meeting of creditors was held on September 4, 2007. On that same day, based on information obtained from the DEBTOR, the TRUSTEE wrote a letter to the DEBTOR, demanding that the DEBTOR turn over the nonexempt portion of the funds in the bank account held in the name of Polar Refrigeration on the petition date, attaching a copy of the bank statement showing a balance on that date of $6,409.59. The TRUSTEE also requested the proceeds the DEBTOR had recently received in the amount of $6,800, from the sale of his boat after the filing of the bankruptcy, noting the DEBTOR'S acquiescence in the TRUSTEE'S objection to exemption claimed in the boat.[1] In that same letter, the TRUSTEE requested copies of the bank statements for the DEBTOR'S other accounts at IHMVCU and documentation concerning the pending lawsuit, noting that the DEBTOR had advised him that he had retained an attorney to represent him and that a complaint had been filed. When the DEBTOR failed to comply with the TRUSTEE'S request to turn

---

[1] Two days later, the TRUSTEE filed an objection to the DEBTOR'S claim of exemption in his boat under Section 3A-7(d) of the Illinois Boat Registration and Safety Act. 625 ILCS 45/3A-7(d). That section, providing that the certificate of title issued for a watercraft is not subject to garnishment or attachment but that the watercraft itself remains subject to a lawful levy, provides no basis for an exemption and the DEBTOR did not contest the objection at the hearing. By agreement, an order was entered denying the exemption on September 28, 2007.

2

over the funds and submit the requested information within fourteen days, the TRUSTEE wrote the DEBTOR on October 9, 2007, making a second demand.

On November 1, 2007, the TRUSTEE filed a complaint objecting to the DEBTOR'S discharge pursuant to Sections 727(a)(2), on the grounds that he transferred, removed or concealed property with the intent to hinder, delay or defraud creditors, both within the year prior to the filing of the petition and after the petition was filed. Specifically, in Count I, the TRUSTEE alleged that the DEBTOR failed to comply with his requests to turn over the sum of $5,909.59, representing the nonexempt funds in the business bank account. In addition, the TRUSTEE alleged that the DEBTOR had a second account at IHMVCU which was not disclosed and contended that the DEBTOR had failed to comply with his requests to provide documentation regarding the lawsuit. Count II, brought pursuant to Section 727(a)(2)(B), alleged that the DEBTOR failed to turn over proceeds from the sale of the boat after the petition was filed. In his answer to the complaint, the DEBTOR admitted the balance in the business account was $6,409.59 when the petition was filed and that he had not turned over the nonexempt portion. The remaining allegations of the complaint were denied. At the pretrial conference, the parties agreed that there were no questions of fact other than the DEBTOR'S state of mind.

The TRUSTEE filed a motion for summary judgment, relying upon the DEBTOR'S admission in his answer and his failure to respond to requests to admit.[2] The Court denied

---

[2] Among the requests to admit were (1) that the DEBTOR had testified at the first meeting of creditors that he had sold the boat two weeks prior to that date, receiving $6,800 which he placed in an account in his name at the IHMVCU; (2) that he had both a personal checking and savings account at IHMVCU; (3) that he had failed to comply with the TRUSTEE'S request at the first meeting to turn over copies of the bank statements; and (4) that he had testified at the first meeting that he had retained an attorney to represent him in the lawsuit against Howard Johnson's and that he had failed to comply with the TRUSTEE'S request to turn over documents regarding the lawsuit.

3

the TRUSTEE'S motion, rejecting his contention that the case came within a narrow exception to the general rule that summary judgment should not be granted where intent is at issue. *In re Herold*, 2008 WL 2414843 (Bankr.C.D.Ill. 2008). Because the DEBTOR'S misconduct consisted primarily of failing to turn over nonexempt funds, the Court noted that if the TRUSTEE had obtained a turnover order and sought denial of discharge under Section 727(a)(6)(A), for the DEBTOR'S refusal to obey a court order, the DEBTOR'S intent would not have been at issue.

On June 25, 2008, the TRUSTEE filed a motion for turnover, seeking the nonexempt funds in the business bank account and the proceeds from the sale of the boat, the statements for the bank account in his name at IHMVCU and documentation concerning the lawsuit. The DEBTOR failed to respond to the motion and an order granting the motion was entered on July 14, 2008. Without objection by the DEBTOR and with approval of the Court, the TRUSTEE filed an amended complaint which restated the first two counts and added a third count under Section 727(a)(6)(A), seeking denial of the DEBTOR'S discharge for refusal to comply with the turnover order. At a final pretrial held on August, 12, 2008, the Court set the matter for trial on October 2, 2008.

In early September, 2008, in response to the TRUSTEE'S inquiry whether the DEBTOR intended to comply with the turnover order, the DEBTOR provided the TRUSTEE with information on his other bank accounts, disclosing balances of $4,016 and $51.21 in his savings accounts and $291.91 in his checking account, on the date the bankruptcy petition was filed.[3] On September 24, 2008, the DEBTOR disclosed the name

---

[3] The letter dated September 8, 2008, from the DEBTOR'S attorney to the TRUSTEE omitted the enclosures, including the bank statements, contained a paragraph that was not complete, and failed to address the proceeds from the sale of the boat. Those deficiencies were corrected by a letter dated September 24, 2008.

4

of the attorney representing him in the pending lawsuit and the name and address of the purchaser of the boat, admitting that the boat was sold the same day that the petition was filed. Along with that information, the DEBTOR turned over $4,000 to the TRUSTEE, claiming that it represented the remaining proceeds from the sale of the boat.

At the trial, the DEBTOR was the only witness to testify. On examination by the TRUSTEE, he admitted that he told the TRUSTEE at the first meeting of creditors that he had sold the boat within the past couple of weeks and that he had deposited the check into an account at IHMVCU and that the money remained on deposit in that account. At a meeting between the TRUSTEE, the DEBTOR and the DEBTOR'S attorney just days before the trial, the DEBTOR admitted telling the TRUSTEE that he may have split the check into two accounts, that he may have negotiated it and kept the cash at home, or that he may have held onto the check for a time. The only detail of which he was certain was that he owned the boat when he signed the petition. Acknowledging that he had agreed to send the bank statements on his other accounts to the TRUSTEE after the first meeting, he conceded that he had failed to do so until the eve of trial.

Unaware that the TRUSTEE had discovered the truth concerning the scheduled lawsuit, the DEBTOR spun quite a yarn. He testified that the attorney who originally handled the lawsuit against Howard Johnson had left the firm and the attorney who would take her place required a significant fee before continuing the representation. When the DEBTOR emphatically stated that he had not tried to settle the claim and that he had never communicated with the attorney for the opposing party, the TRUSTEE presented the

5

DEBTOR with a release dated July 11, 2007, bearing his signature and a subsequent letter evidencing that the lawsuit had been settled for $12,000, which the DEBTOR had received within the week prior to the filing of the bankruptcy.

On examination by his attorney, the DEBTOR testified that he suffers from bouts of chronic dermatitis which lead to dental problems and require treatment by both a dermatologist and dentist. Due to that condition, he has applied for social security disability. Because he had no income at the time the petition was filed, his living and medical expenses consumed most of the $18,000 he had on hand. The DEBTOR testified that the $4,000 turned over to the TRUSTEE was the last of his money. His attempts to refinance his mortgage in order to satisfy the TRUSTEE'S turnover demands were turned down, based upon his lack of steady income.

**ANALYSIS**

A denial of discharge is an extremely harsh and drastic penalty. *In re Lindemann*, 375 B.R. 450 (Bankr.N.D.Ill. 2007). As such, it is reserved for the "truly pernicious debtor." *In re Johnson*, 98 B.R. 359, 367 (Bankr.N.D.Ill. 1988). Consistent with the goal underlying the Bankruptcy Code of affording debtors a "fresh start," the grounds for denial of discharge listed in Section 727 are liberally construed in favor of debtors and strictly against objectors. *Matter of Juzwiak*, 89 F.3d 424 (7th Cir. 1996). The objector seeking denial of discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

**Section 727(a)(2)**

Section 727(a)(2)(A) provides that a court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged

6

with custody of property . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." In order to prevail under this provision, a plaintiff must prove by a preponderance of the evidence that (1) the debtor; (2) transferred, removed, destroyed or concealed; (3) the debtor's property; (4) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property. *Village of San Jose v. McWilliams*, 284 F.3d 785 (7th Cir. 2002). Essentially, the exception consists of two components: an act, i.e., a transfer or a concealment of property, and an improper intent, i.e., a subjective intent to hinder delay or defraud a creditor. *In re Kontrick*, 295 F.3d 724 (7th Cir. 2002). Because direct evidence of a fraudulent intent is rare, fraudulent intent may be inferred from the debtor's actions and may be proved by circumstantial evidence. *Matter of Yonikus,* 974 F.2d 901 (7th Cir. 1992). In determining whether a debtor has acted with intent to defraud, the debtor's "whole pattern of conduct" should be considered. *Lindemann, supra.* Denial of discharge need not be premised on an intent to defraud, but also upon an intent to hinder or delay the objecting creditor or trustee. *In re Butler*, 377 B.R. 895 (Bankr.D.Utah 2006). The elements for Section 727(a)(2)(B) are substantially the same as those for Section 727(a)(2)(A), except that the plaintiff must prove that the debtor transferred or concealed property of the estate after the bankruptcy petition was filed.

As this Court noted in its earlier opinion denying the TRUSTEE'S motion for summary judgment, the TRUSTEE'S theory under Section 727(a)(2) is one of concealment. The TRUSTEE contends that the DEBTOR'S discharge should be denied because he failed to turn over the nonexempt portion of funds in a scheduled bank account; sold his boat

after filing the petition and has failed to turn over the sale proceeds; failed to provide the TRUSTEE with information on unscheduled bank accounts; and failed to provide the TRUSTEE with information regarding a pending lawsuit. The Court denied the TRUSTEE'S motion, determining that the DEBTOR'S failure to list the correct balance in the scheduled bank account, by itself, did not constitute concealment. In so ruling, the Court noted that the DEBTOR'S failure to schedule other bank accounts may constitute concealment, upon proof that he had the intent to hinder, delay or defraud creditors.

There is no question in the Court's mind that the DEBTOR has acted knowingly and with the intent to defraud creditors and the TRUSTEE. The DEBTOR'S actions in both omitting assets from his bankruptcy schedules and in falsely scheduling the lawsuit as pending; in testifying falsely at his first meeting of creditors regarding the lawsuit; and in persistently refusing to cooperate with the TRUSTEE'S requests for documentation, reflect a calculated intent to deceive and defraud. Were those actions not enough, the DEBTOR continued to deny the settlement of the lawsuit at trial. The evidence that the DEBTOR knowingly intended to defraud his creditors and the TRUSTEE is overwhelming. The DEBTOR'S eve-of-trial payment of $4,000 to the TRUSTEE, a sum that represents only a fraction of the value of the assets secreted and dissipated by the DEBTOR, does not negate his earlier intent or rectify his prior actions.

**Section 727(a)(6)(A)**

Section 727(a)(6)(A), which provides a separate ground for denying a discharge, provides that a bankruptcy court shall deny a discharge if the debtor has refused to obey any lawful order of the court, other than an order to respond to a material question or to

8

testify. 11 U.S.C. § 727(a)(6)(A). In order to warrant denial of discharge, the debtor's "refusal" to comply with the terms of a lawful court order must be the result of a wilful, intentional disobedience or dereliction and not the result of an inability to comply, inadvertence or mistake. *In re Jordan*, 521 F.3d 430 (4th Cir. 2008); *In re Eckert*, 375 B.R. 474 (Bankr.N.D.Ill. 2007); *Matter of Jarrell*, 129 B.R. 29 (Bankr.D.Del. 1991); *contra In re Magack*, 247 B.R. 406 (Bankr.N.D.Ohio 1999).

On June 25, 2008, after this Court issued its opinion denying the TRUSTEE'S motion for summary judgment, the TRUSTEE filed a motion for turnover seeking that the DEBTOR turn over the sum of $12,709.59, representing the nonexempt funds in the scheduled bank accounts and the proceeds from the sale of the boat, the statements for the bank accounts in his name at IHMVCU and any documentation concerning the lawsuit. The DEBTOR failed to respond to the motion and armed with a turnover order entered on July 14, 2008, the TRUSTEE moved to amend the complaint to add Count III alleging that the DEBTOR'S discharge should be denied for refusing to obey that order.

The DEBTOR filed his petition on July 23, 2007. At trial, the DEBTOR testified that between the date the petition was filed and the fall of 2007, he had no source of income and that he spent the funds which the TRUSTEE sought on medical and living expenses.[4] It is clear from that testimony that at the time the turnover order was entered, the DEBTOR was unable to comply with the TRUSTEE'S demand for the turnover of funds because they no longer existed and the DEBTOR was financially unable to repay them. Accordingly, with respect to the nonexempt funds, the TRUSTEE'S belated motion is akin to shutting the barn

---

[4] According to the Statement of Affairs, the DEBTOR'S gross income in 2005 was $3,606; $91 in 2006; and -0- in 2007. Schedule I shows that his only income is rental income of $500 per month.

9

doors after the horses have escaped.

The result is not the same, however, with regard to the DEBTOR'S refusal to comply with the Court's order directing him to provide the TRUSTEE with all documents he had concerning the Howard Johnson lawsuit.[5] At trial, the DEBTOR continued his attempts to hoodwink the TRUSTEE, testifying that he could not pursue the lawsuit because he could not afford the additional fees which his attorney demanded. When confronted with the settlement documents, the DEBTOR, quite understandably, had nothing to say. The settlement proceeds of $12,000 were received just six days before the petition was filed. The DEBTOR, attempting to secrete the funds, intentionally disobeyed the turnover order and his discharge should be denied under Section 727(a)(6)(A).[6]

**Section 727(a)(4)**

Evidence introduced at trial relating to the TRUSTEE'S concealment claim established that the DEBTOR'S discharge should also be denied under Section 727(a)(4), which provides for denial of a discharge based upon a false oath. The DEBTOR, in response to questioning by the TRUSTEE, admitted that he represented, first in his schedules, next at his meeting of creditors and finally at the September meeting with the TRUSTEE that his claim against Howard Johnson was still pending. Prior to being presented with the settlement documents, the DEBTOR falsely testified at trial that he had never communicated with the opposing party or its attorney regarding the claim, that he had no records relating to the claim and that he had not received any monies in settlement

---

[5] Although the DEBTOR failed to comply with the order's directive to turn over all bank account statements for accounts in his name at IHMVCU, in a letter dated September 8, 2008, the requested information was turned over to the TRUSTEE.

[6] In his amended complaint, the TRUSTEE seeks entry of a monetary judgment against the DEBTOR. In this Court's view, that relief is not appropriate in this adversary proceeding brought under Section 727 seeking denial of the DEBTOR'S discharge.

10

of the claim. Although that objection to discharge was not pled by the TRUSTEE, the Court is satisfied that the DEBTOR had more than a fair chance to defend the objection to discharge and that he had no additional evidence which he could have presented.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###